UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------X
THERESA GARLAND, on behalf of herself
And others similarly situated,

                          Plaintiff,          **MEMORANDUM AND FINAL APPROVAL ORDER OF CLASS ACTION SETTLEMENT**

 - against -

COHEN & KRASSNER,                     08-CV-4626 (KAM)(RLM)

                         Defendant.
---------------------------------------X
**MATSUMOTO, United States District Judge:**

        On November 14, 2008, plaintiff Theresa Garland

("Garland" or "plaintiff") filed the instant class action

lawsuit, on behalf of herself and others similarly situated,

against Cohen & Krassner ("C&K") and one of its named partners,

Steven Cohen (collectively, "defendants"), alleging violations

of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et

seq.* ("FDCPA").  On May 31, 2011, the court entered a

Preliminary Approval Order that (i) certified a settlement

class; (ii) preliminarily approved the settlement; (iii)

directed notice to the settlement class; and (iv) established

deadlines for opt outs, objections, and a fairness hearing,

which was held on October 31, 2011.  Presently before the court

is plaintiff's motion for final approval of the proposed class

action settlement agreement and an application by class counsel

for reasonable attorney's fees and costs, and an award to

plaintiff.  For the reasons that follow, the court (i) approves

the settlement; (ii) awards class counsel attorneys' fees in the amount of $16,710.00 and costs in the amount of $350.00; and (iii) awards $3,000 to Garland as class representative.

**BACKGROUND**

**I.  Complaint and Defendants' Motion to Dismiss**

Plaintiff filed the instant class action lawsuit, on behalf of herself and all others similarly situated, on November 14, 2008, alleging violations of the FDCPA by C&K and Steven Cohen as a result of defendants' efforts to collect an outstanding debt.  (ECF No. 1, Complaint ("Compl.") ¶ 16.) Plaintiff claims that defendants violated the FDCPA by sending plaintiff a collection letter, dated November 16, 2007, which allegedly (i) failed to notify plaintiff that she must request verification of the debt "in writing," (*id.* ¶ 35); (ii) failed to advise plaintiff that she had 30 days from receipt of the letter in which to make a written demand for the name and address of the original creditor, (*id.* ¶ 36); (iii) improperly threatened to commence suit within the 30-day validation period, (*id.* ¶ 37); (iv) failed to provide the name of the current creditor, (*id* ¶ 38); (v) gave the false impression that a lawsuit already had been commenced against plaintiff, (*id.* ¶ 39); and (vi) gave the false impression that the letter was from an attorney, (*id.* ¶ 40).  Plaintiff sought statutory damages and attorneys' fees and costs.  (*Id.* at 8.)

On April 7, 2009, defendants requested a pre-motion conference, raising several defenses and indicating their intention to file a motion to dismiss the Complaint for failure to state a cause of action, pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* ECF No. 8, Motion for pre-motion conference, filed 4/7/2009.) Plaintiff opposed defendants' request by letter dated April 8, 2009. (*See* ECF No. 9, Response to Motion, filed 4/8/2009.) During a pre-motion conference held on April 20, 2009, however, the parties informed the court that they were actively engaged in settlement discussions and wished to hold in abeyance the motion to dismiss pending those discussions. (*See* Minute Entry, dated 4/20/2009.)

## II.  Proposed Settlement

On May 17, 2010, plaintiff and C&K filed a joint motion for settlement of the action as against C&K. (*See* ECF No. 16, Joint Motion for Preliminary Approval of Class Action Settlement, filed 5/17/2010.) Prior to entering into the settlement, plaintiff agreed to dismiss the claims against Steven Cohen. (*See* ECF No. 17, Stipulation of Dismissal, filed 5/21/2010.) The parties amended the settlement terms two times before filing the instant joint motion for approval of the settlement on April 22, 2011. (*See* ECF No. 26, Third Amended Joint Motion for Preliminary Approval, filed 4/22/2011 ("Third Mot. for Settlement"); *see also* ECF No. 18, Joint Motion for

3

Preliminary of Amended Class Action Settlement, filed 6/30/2010;
ECF No. 19, [Second Amended] Joint Motion for Preliminary of
Amended Class Action Settlement, filed 7/13/2010.)

On May 17, 2011, at the court's request, C&K filed a
financial affidavit setting forth the basis for the parties
determination of C&K's net worth for settlement purposes. (*See*
ECF No. 29, Ex Parte Financial Affidavit, filed 5/17/2011.)  The
parties represented to the court that in approximately September
2009, they had agreed that the combined net worth of defendants
Steven Cohen, Mark Krassner, and the law firm of Cohen &
Krassner during the years 2006, 2007, and 2008 was approximately
$500,000. (*Id.* at 1-2.)  The court finds that the financial
affidavit and supporting documents support the defendants'
combined net worth estimate.

On May 31, 2011, the court entered a Preliminary
Approval Order certifying the following class for settlement
purposes (the "Settlement Class"):

> All consumers in the State of New York who,
> according to Defendants' records: (a) from
> November 15, 2007 through March 30, 2009;
> (b) were sent collection letters in a form
> materially identical or substantially
> similar to the letter sent to the Plaintiff
> on or about November 16, 2007 and attached
> to the Complaint as Exhibit A; and (c) which
> were not returned by the postal service as
> undelivered.

(ECF No. 30, Preliminary Approval Order, dated 5/31/2011, at 3.)
The court preliminarily approved the settlement of the action
and found that (i) settlement of the case for a recovery to the
Settlement Class of $6,650.00, plus the cost of notice and
distribution, constitutes more than the maximum available
recovery to a class under the FDCPA, and is therefore fair and
reasonable; and (ii) payment to Garland of $3,000 for statutory
damages and for her role in the litigation is fair and
reasonable.  (*Id.* at 2.)  The court stated that class counsel
"may apply to the court for a separate payment of fees and
costs, based on appropriate documentation, not to exceed
$25,000.00, which will not be taken from any recovery to the
Settlement Class."  (*Id.*)  The Preliminary Approval Order
directed notice to be given to the Settlement Class members, set
dates for Settlement Class members to object to or opt out of
the settlement, and scheduled a fairness hearing pursuant to
Rule 23(e)(2).  (*See id.* at 3-6.)

       As directed in the Preliminary Approval Order, on June
13, 2011, the settlement administrator, Berdon Claims
Administration, Inc. ("Settlement Administrator") mailed copies
of the Notice to Settlement Class members whose names and
addresses were provided by defendant's counsel.  (ECF No. 33,
Affidavit of Mailing of Notice and Exclusion Requests Received,

filed 9/21/2011 ("Aff. of Mailing") ¶¶ 3-4.)[1]  In addition, the Notice was posted on the Settlement Administrator's website on June 13, 2011.[2]  (*Id.* ¶ 4.)  The Settlement Administrator received two timely requests for exclusion.  (*Id.* ¶ 9; ECF No. 35, Plaintiff's Memorandum in Support of Final Approval of Class Action Settlement, Attorney's Fees, and Representative Fees, filed 10/6/2011 ("Pl. Mem.") at 1.)  No objections to the settlement were received.  (ECF No. 35, Pl. Mem. at 1.)  As of October 3, 2011, the Settlement Administrator had received 81 claim forms.  (ECF No. 34, Affidavit of Claims Received, filed 10/3/2011, ¶ 2.)  However, it was later determined that six of those forms were ineligible.  (ECF No. 40, Letter Motion to Amend/Correct/Supplement the Final Approval Order of Judgment,

---

[1] Out of the 3,201 copies of the Notice that were mailed, 27 were returned to the Settlement Administrator with forwarding address stickers affixed.  Those 27 Notices were re-mailed to the recipients at the corrected addresses.  (ECF No. 40-1, Supplemental Affidavit of Claims Mailed and Received, filed 11/1/2011 ("Supp. Aff. of Mailing") ¶ 3.)  In addition, 855 Notices were returned to the Settlement Administrator as undeliverable.  Upon receipt, the Settlement Administrator forwarded the names to the Accurint search service, which located new addresses for 614 of the undeliverable Notices.  Those 614 Notices were re-mailed to the recipients at the new addresses.  (*Id.* ¶ 4.)

[2] After the Notice was mailed, it was discovered that the original class list, which contained 3,201 names and addresses, inadvertently contained 519 names and addresses of individuals who were not residents of New York State and therefore were not within the Settlement Class certified by the court.  A court-approved Errata Notice was mailed to 354 individuals who were not residents of New York State, because of the 519 non-resident inadvertent recipients, three records were duplicates and 162 had never received the original Notice because their Notices were returned as undeliverable.  Thus, out of the original 3,201 individuals who were sent the original Notice, 2,682 were properly within the Settlement Class and eligible to return the claim forms.  (ECF No. 33, Affidavit of Mailing of Notice and Exclusion Requests Received, filed 9/21/2011 ¶¶ 5-7; ECF No. 35, Plaintiff's Memorandum in Support of Final Approval of Class Action Settlement, Attorney's Fees, and Representative Fees, filed 10/6/2011 at 4-5.)

filed 11/1/2011 ("11/1/2011 Ltr.") at 1; ECF No. 40-1, Supplemental Affidavit of Claims Mailed and Received, filed 11/1/2011 ("Supp. Aff. of Mailing") ¶ 6.)[3]  Thus, 75 claim forms were timely and properly submitted.

At the fairness hearing held on October 31, 2011, no objectors appeared.

## LEGAL STANDARDS

### I.   Certification of the Settlement Class

"Before certification is proper for any purpose – settlement, litigation, or otherwise – a court must ensure that the requirements of Rule 23(a) and (b) have been met." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006); *see also Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y. 2006).  Rule 23(a) provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

---

[3] Five of the six ineligible claim forms received by the Settlement Administrator were submitted by non-residents of New York State who were not properly in the class and had been sent the Notice in error.  One of the ineligible claim forms was a duplicate of another claim form.  (ECF No. 40-1, Supp. Aff. of Mailing ¶ 6.)

Fed. R. Civ. P. 23(a).  Rule 23(b) provides, in relevant part,
that a class action may be maintained if Rule 23(a) is satisfied
and if:

> the court finds that the questions of law or
> fact common to class members predominate
> over any questions affecting only individual
> members, and that a class action is superior
> to other available methods for fairly and
> efficiently adjudicating the controversy.

Fed. R. Civ. P. 23(b)(3).  In making this determination, courts
employ a "liberal rather than restrictive construction" of Rule
23, adopting a "standard of flexibility" in deciding whether to
grant certification.  *Reade-Alvarez*, 237 F.R.D. at 31 (citation
omitted).

## II.  Approval of the Final Settlement

Rule 23(e) requires court approval of any "settlement,
voluntary dismissal, or compromise" of the claims of a certified
class.  Fed. R. Civ. P. 23(e).  Adequate notice must be directed
to "all class members who would be bound by the proposal" and a
fairness hearing must be held.  Fed. R. Civ. P. 23(e)(1), (2).
In addition, a district court may approve a class action
settlement only if it determines that the settlement is "fair,
adequate, and reasonable, and not a product of collusion."  *Joel
A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000).  The court
must consider both the procedural fairness of the negotiating
process leading to the settlement, as well as the substantive

terms of the settlement itself.  *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001).

### a. Adequacy of Notice

To provide effective notice to class members, Rule 23(c)(2)(B) provides that:

> For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.  The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

### b. Procedural Fairness

"A court reviewing a proposed settlement must pay close attention to the negotiating process, to ensure that the settlement resulted from arm's-length negotiations and that plaintiffs' counsel have possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests." *D'Amato*, 236 F.3d at

85 (citation and internal quotation marks omitted).  "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery."  *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks and citation omitted).

### c. Substantive Fairness

Courts in the Second Circuit examine nine factors in determining whether a settlement is substantively fair and reasonable, as required by Rule 23(e):

> (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability, (5) the risks of proving damages; (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*McReynolds v. Richards-Cantave*, 588 F.3d 790, 804 (2d Cir. 2009) (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)).

## APPLICATION

### I.   Requirements for Class Certification

In the Preliminary Approval Order entered by the court on May 31, 2011, the court certified the class for settlement purposes only.  Before doing so, the court was satisfied that the Settlement Class as defined met the requirements for class certification pursuant to Rule 23(a) and (b).

#### a.   Rule 23(a) Requirements

##### i.   Numerosity

The Joint Motion for Preliminary Approval for Class Action initially stated that the number of class members was 3,201.  Some of those names were later discovered to have been included on the list in error.  After the erroneously included names and addresses were removed from the class list, the number of individuals properly within the Settlement Class and eligible to return the claim forms totals 2,682.  This more than satisfies the requirement of numerosity.

##### ii.  Common Questions of Fact or Law

Commonality is satisfied "if plaintiffs' grievances share a common question of law or fact." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997).  The central issues in this case are whether the defendant mailed substantially similar or materially identical letters and whether those

letters violated the FDCPA.  These issues are common to all
members of the Settlement Class.

### iii.  Typicality

Typicality is satisfied when "each class member's
claim arises from the same course of events and each class
member makes similar legal arguments to prove the defendant's
liability." *Robidoux v. Celani*, 987 F.2d 931, 936 (2d. Cir.
1993) (citations omitted).  "When it is alleged that the same
unlawful conduct was directed at or affected both the named
plaintiff and the class sought to be represented, the typicality
requirement is usually met irrespective of minor variations in
the fact patterns underlying the individual claims." *Id.* at
936-37 (citations omitted).  Here, all the alleged members'
claims arose out of identical or substantially similar letters,
resulting in the same alleged violations of the FDCPA implicated
for each class member.  Thus, Garland's claims and defenses are
typical of the class.

### iv.  Adequacy of Representation

To satisfy the requirement of adequate representation,
a plaintiff must demonstrate two elements:  (1) "there is no
conflict of interest between the named plaintiffs and other
members of the plaintiff class" and (2) "class counsel is
qualified, experienced, and generally able to conduct the

litigation." *Marisol A.*, 126 F.3d at 378 (citations omitted);
*see also Baffa v. Donaldson*, 222 F.3d 52, 60 (2d Cir. 2000).

The court does not find in the record any antagonism
between plaintiff Garland's claims and those of the Settlement
Class that would interfere with her ability to act as class
representative.  As noted above, the Settlement Class consists
of those who received an individual or substantially similar
message to the one Garland received.

Further, plaintiff's counsel, Brian L. Bromberg, Esq.,
of the Bromberg Law office, P.C., is qualified and experienced
to serve as counsel to a class certified under the FDCPA.
Specifically, Mr. Bromberg has been practicing law for nearly 20
years, the last ten of which he has been a solo practitioner
concentrating in the field of consumer protection law.  (ECF No.
36, Declaration of Plaintiff's Attorney Brian L. Bromberg, filed
10/6/2011 ("Bromberg Decl."), ¶¶ 5, 9-11.)  He has substantial
experience in consumer rights litigation and class actions, and
he has served as class counsel in numerous FDCPA cases.  (*See
id*. ¶ 17.)

Accordingly, the court finds that the class is
adequately represented.

    **b.  Rule 23(b)(3) Requirements**

       **i.  Questions of law or fact common to class members predominate.**

The court found that the issues regarding the identical or substantially similar letters from defendant predominate over the sole issue that is subject to individualized proof, which is the identity of those who received the letter.  Further, a class action here appears to be the superior method for the "fair and efficient adjudication" of a suit involving 2,682 individuals with nearly identical claims.  Accordingly, the court certified the Settlement Class.  (ECF No. 30, Preliminary Approval Order at 2-3.)

**II.  Approval of Final Settlement**

    **a.  Adequacy of Notice to Class Members**

In the Preliminary Approval Order, the court concluded that the form Notice was adequate and directed that it be mailed to the Settlement Class members and posted on the Settlement Administrator's website.  (*Id.* at 3-4.)  The parties completed the mailing and posting of the Notice, as directed, on June 13, 2011.  In response, two class members opted out and nobody objected to the Settlement.  The court finds that the notice meets the requirements set forth under Rule 23(c)(2)(B).

b.   **Procedural Fairness**

In plaintiff's Memorandum in Support of Final Approval, plaintiff stated that the parties had engaged in arms-length negotiations in connection with this settlement in which they achieved more than the maximum recovery for the Settlement Class.  (*See* ECF No. 35, Pl. Mem. at 2.)

During the fairness hearing on October 31, 2011, class counsel further informed the court that the parties originally disagreed regarding Mr. Cohen's personal liability for the instant action, as his signature appeared on the letters received by Class Members.  As the record reflects, the parties ultimately agreed that Mr. Cohen's net worth would be counted toward defendants' total net worth, but that Mr. Cohen would not be held personally liable, and the case against Mr. Cohen in his individual capacity was dismissed on May 17, 2010.

In addition, the parties engaged in negotiations regarding the time period covered by the settlement.  At defendants' request, the class period was extended to cover the additional four months in excess of one year during which defendants continued to mail letters like the ones received by Class Members.  In exchange, defendants agreed to a proportional increase in the settlement amount above the statutory maximum recovery available under the FDCPA.  (*Id.* at 2-3.)

Accordingly, I find that the parties have engaged in "arms-length negotiations" and the settlement is procedurally fair.

**c.    Substantive Fairness**

    **i.    Complexity, expense, and likely duration of the litigation**

The factual and legal issues in this case are not complex.  Given the complexity of any class action lawsuit, however, it is reasonable to assume that absent the instant Settlement, continued litigation would have required extensive time and expense.  Further, prior to reaching the instant Settlement, defendants sought to file a motion to dismiss.  If the Settlement is not approved, protracted discovery and litigation will likely ensue.  Accordingly, this factor weighs in favor of approving the Settlement.

    **ii.    Reaction of the class**

Class action notices were mailed to more than 2,500 individuals.  In response, two individuals requested exclusion from the class.  No objections were received.  This small number of opt outs favors approval.  *See Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, No. CV-04-2195, 2006 U.S. Dist. LEXIS 89226, at *17 (E.D.N.Y. Dec. 11, 2006) (approving settlement where 15 individuals out of a class of 40,000 requested exclusion and only two objections were filed).

16

### iii.  **Stage of the proceedings and discovery completed**

The stage of the proceedings and the amount of discovery the parties have conducted is "relevant to the parties' knowledge of the strengths and weaknesses of the various claims in the case, and consequently affects the determination of the settlement's fairness." *In re Paine-Webber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997).

Plaintiff's Memorandum in Support of Final Approval states that prior to settlement the parties engaged in informal discovery, in which defendants represented to plaintiff their net worth. (ECF No. 35, Pl. Mem. at 2-3.) Further, plaintiff's Memorandum subsequently states that "[t]he parties engaged in substantial discovery and substantial negotiations over a three-year period." (*Id.* at 15.) It appears from the docket and from class counsel's time records, however, that the parties agreed to settle the case before engaging in any formal discovery. (*See* ECF No. 38, Reply in Support re Motion for Settlement, filed 10/10/2011, Ex. A ("Time Records").) Further, plaintiff's counsel represented to the court during the fairness hearing that discovery was limited to obtaining from the defendants net worth information and information regarding class members. Nevertheless, the court is satisfied that the parties entered into the instant settlement with sufficient information as to what trial would entail.

### iv.  Risks of establishing liability and proving damages

"In assessing the adequacy of a settlement, a court must balance the benefits of a certain and immediate recovery against the inherent risks of litigation." *In re Med. X-Ray Film Antitrust Litig.*, No. 93-CV-5904, 1998 U.S. Dist. LEXIS 14888, at *11 (E.D.N.Y. Aug. 7, 1998).  Although risks associated with establishing damages in this case are low because plaintiffs are seeking only statutory damages, the risks associated with establishing liability are real.  Indeed, before the parties reached a settlement, defendant sought to file a motion to dismiss, arguing that plaintiff's Complaint lacked merit.  If defendant were to prevail in its motion, plaintiff would receive nothing.  Moreover, given the small amount of damages available in cases brought pursuant the FDCPA, the benefits of immediate recovery outweigh the risks associated with ongoing litigation.  *See Reade-Alvarez*, 2006 U.S. Dist. LEXIS 89226, at *20.

### v.  Risks of maintaining a class action through trial

The parties stipulated to class certification solely for the purpose of settlement.  If the class action were litigated, however, it is likely that defendants would oppose class certification.  Accordingly, this factor weighs in favor of settlement.  *See In re Med. X-Ray*, 1998 U.S. Dist. LEXIS

14888, at *14 (possibility that defendants would challenge maintenance of a class in the absence of settlement was considered a risk to the class and potential recovery).

> ### vi. Ability of the defendants to withstand greater judgment and the range of reasonableness of the settlement fund in light of the best possible recovery and the attendant risks of litigation

Defendants have submitted financial statements demonstrating that their combined net worth as of September 2009 was approximately $500,000. (*See* ECF No. 29, Ex Parte Financial Affidavit.) It is likely, therefore, that defendants could withstand a greater judgment than the $6,650 for which the instant case is settling. Nonetheless, this is not a significant factor here because plaintiffs' recovery is limited by statute. *See Ayzelman v. Statewide Credit Servs. Corp.*, 242 F.R.D. 23, 28 (E.D.N.Y. 2007) (finding that "defendants' ability to withstand a greater judgment is not pertinent to the settlement consideration" where damages were limited to the statutory maximum pursuant to the FDCPA ).

Pursuant to 15 U.S.C. §§ 1692k(a)(1) and (a)(2)(B), recovery is limited to actual damages, plus statutory damages in an amount not to exceed $1,000 for each named plaintiff, and statutory damages in an amount not to exceed the lesser of $500,000 or one percent of defendants' net worth for the remainder of the class. Because plaintiff has not alleged

actual damages, if this case were to proceed to trial, the Settlement Class's recovery would be limited to $5,000.00, representing one percent of defendants' net worth.  15 U.S.C. § 1692k(a)(2)(B).  Defendants have agreed, however, to establish a settlement fund of $6,650.00, which is 1.33 percent of their net worth.  According to plaintiff, the damages in excess of the statutory maximum are meant "to cover the additional four months – in excess of one year – during which Defendants continued using the letter and for which Defendants requested coverage as part of this settlement."  (ECF No. 35, Pl. Mem. at 3.)  The $6,650.00 settlement fund will be divided *pro rata* among all class members who timely file claim forms.  (*Id.*; ECF No. 26-2, Class Action Settlement Agreement and Release, dated 4/21/2011 ¶ 30.)[4]  Because the parties have settled for an amount exceeding the statutory maximum amount plaintiffs would have been entitled to recover had they succeeded at trial, the settlement is reasonable in light of the best possible recovery available to the class and the attendant risks of litigation.

* * *

---

[4] The court notes that plaintiff's Memorandum of Law and the Proposed Final Approval Order submitted by the parties states that funds from settlement checks that are not negotiated within 90 days of issuance will be deposited in a *cy pres* fund for the National Consumer Law Center.  (*See* ECF No. 35, Pl. Mem. at 3; ECF No. 26-6, [Proposed] Final Approval Order, filed 4/22/2011, ¶ 3(a).)  However, the Class Action Settlement Agreement and Release entered into by the parties does not contain this stipulation.  (*See* 26-2, Class Action Settlement Agreement and Release, dated 4/21/2011.)

After considering the relevant factors, the court finds the settlement to be substantively fair and reasonable.

## III. Attorneys' Fees and Costs

Plaintiff's counsel seeks attorneys' fees in the amount of $25,000.00 and $1,180.50 in costs.  Defendant has not objected to these amounts.  Pursuant to 15 U.S.C. § 1692k(a)(3), counsel for a prevailing party in a FDCPA action is entitled to "the costs of the action, together with a reasonable attorney's fee as determined by the court."  Here, by achieving more than the maximum possible monetary relief available under the statute, plaintiff's counsel succeeded in their efforts.

The Second Circuit has held that courts are to award counsel the "presumptively reasonable fee," which is determined by multiplying the reasonable hourly rate by the number of reasonably expended hours.  *Simmons v. N.Y. City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009).

### a. Reasonable Hourly Rate

A reasonable hourly rate is "'what a reasonable, paying client would be willing to pay,' given that such a party wishes 'to spend the minimum necessary to litigate the case effectively.'"  *Simmons*, 575 F.3d at 174 (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 493 F.3d 110, 112, 118 (2d Cir. 2007), *amended on other grounds*, 522 F.3d 182 (2d Cir. 2008)).  The court should also consider the

following case-specific factors in determining the reasonable

hourly rate:

> (1) the time and labor required; (2) the
> novelty and difficulty of the questions; (3)
> the level of skill required to perform the
> legal service properly; (4) the preclusion
> of employment by the attorney due to
> acceptance of the case; (5) the attorney's
> customary hourly rate; (6) whether the fee
> is fixed or contingent; (7) the time
> limitations imposed by the client or the
> circumstances; (8) the amount involved in
> the case and the results obtained; (9) the
> experience, reputation, and ability of the
> attorneys; (10) the "undesirability" of the
> case; (11) the nature and length of the
> professional relationship with the client;
> and (12) awards in similar cases.

*Arbor Hill*, 522 F.3d at 114 n.3 (citing *Johnson v. Georgia*

*Highway Express, Inc*., 488 F.2d 714, 717-19 (5th Cir. 1974),

*overruled on other grounds by Blanchard v. Bergeron*, 489 U.S. 87

(1989)).  In calculating the presumptively reasonable fee,

"courts should generally use the hourly rates employed in the

district in which the reviewing court sits." *Simmons*, 575 F.3d

at 174 (citation and internal quotation marks omitted).

In the Eastern District of New York, "hourly rates for

attorneys . . . have [normally] ranged from $200 to $350 an hour

for partners, $200 to $250 for senior associates with four or

more years of experience, $100 to $150 an hour for junior

associates with one to three years of experience, and $70 to $80

for legal assistants." *Crapazano v. Nations Recovery Ctr.,*

*Inc.*, No. 11-CV-1008, 2011 U.S. Dist. LEXIS 76759, at *4
(E.D.N.Y. June 29, 2011), *adopted by* 2011 U.S. Dist. LEXIS 76665
(E.D.N.Y. July 14, 2011) (citation omitted); *see also Local 282,
Int'l Bhd. of Teamsters v. Pile Found. Constr. Co.*, No. 09-cv-
4535(KAM)(LB), 2011 U.S. Dist. LEXIS 86644, at *33 (E.D.N.Y.
Aug. 5, 2011) ("Recent prevailing hourly rates in the Eastern
District are: (1) between two hundred dollars ($200.00) to four
hundred dollars ($400.00) for partners; (2) between one hundred
dollars ($100.00) to two hundred ninety-five dollars ($295.00)
for associates; and (3) between seventy dollars ($70.00) to
eighty dollars ($80.00) for legal assistants, including
paralegals, or legal interns.") (quoting *Szczepanek v. Dabek*,
No. 10-CV-2459, 2011 U.S. Dist. LEXIS 23458 (E.D.N.Y. Mar. 7,
2011)).

Plaintiff's counsel's request for an award of
attorneys' fees is based on the following hourly rates and hours
billed:

| Attorney | Rate | Hours Billed | Total |
| --- | --- | --- | --- |
| Brian L. Bromberg, Esq. | $400 | 48.40 | $19,360 |
| Peter Lane, Esq. | $200 | 20.10 | $4,020 |
| Michael N. Litrownik, Esq. | $200 | 12.50 | $2,500 |

(ECF No. 36, Bromberg Decl. ¶¶ 3, 29, 32, 35, 36.) The court
finds that, in light of the attorneys' experience and other

case-specific factors, these hourly rates are not reasonable for these attorneys in this district.

Mr. Bromberg is admitted to the bar in New York and California, and he has nearly 20 years of experience practicing law.  (ECF No. 36, Bromberg Decl. ¶ 6.)  Since 2001, he has been a solo practitioner, focusing his practice on consumer protection law.  (*Id.* ¶ 10.)  Mr. Bromberg's declaration details his substantial experience in consumer protection and consumer fraud litigation, including participation in numerous consumer fraud class actions and professional groups focused on consumer protection.  (*Id.* ¶¶ 14-25.)  Mr. Bromberg argues that "[a]s [his] experience in the field of consumer litigation has increased, federal judges in Brooklyn, Manhattan, Central Islip, and White Plains have steadily increased [his] approved rates." (*Id.* ¶ 27.)

The court does not find that an hourly rate of $400 for Mr. Bromberg is reasonable.  In FDCPA cases, courts in the Eastern District of New York have regularly awarded experienced attorneys hourly rates ranging from $250 to $350.  *See, e.g.*, *Crapazano*, 2011 U.S. Dist. LEXIS 76759, at *4 (finding $250 to be a reasonable hourly rate for an FDCPA case in the E.D.N.Y.); *Aslam v. Malen & Assocs., P.C.*, 669 F. Supp. 2d 275, 277 (E.D.N.Y. 2009) (awarding attorney with 6 years' experience in consumer protection cases an hourly rate of $250 in an FDCPA

case); *Larsen v. JBC Legal Group, P.C.*, 588 F. Supp. 2d 360, 364 (E.D.N.Y. 2008) (awarding Mr. Bromberg, counsel in the instant case, who had 17 years of experience including 7 years specializing in consumer protection law, an hourly rate of $300 in an FDCPA case); *Baruch v. Healthcare Receivable Mgmt., Inc.*, No. 05-CV-5392, 2007 U.S. Dist. LEXIS 80429, at *18 (E.D.N.Y. Oct. 29, 2007) (awarding solo practitioner with 19 years of experience an hourly rate of $350 in an FDCPA case); *Sparkman v. Zwicker & Assocs., P.C.*, No. 04-CV-1143, 2006 U.S. Dist. LEXIS 7376, at *5-6 (E.D.N.Y. Feb. 27, 2006) (noting that "district courts in this circuit have awarded attorney's fees at rates ranging from $200 to $250 per hour for experienced attorneys in FDCPA cases" and awarding attorney an hourly rate of $200); *Pinkham v. Prof'l Claims Bureau, Inc.*, 367 F. Supp. 2d 338, 340 (E.D.N.Y. 2005) (awarding counsel an hourly rate of $250 in an FDCPA case). The court notes Bromberg's assertion that he regularly bills $350 to $450/hour on contingency on FDCPA and other federal court litigation. (ECF No. 36, Bromberg Decl. ¶ 26.)

On the other hand, although plaintiff states in conclusory terms that "[t]he questions presented by this case were not routine" in that they have "seldom been litigated in this district," (ECF No. 35, Pl. Mem. at 16-17), the court finds that this case was neither complex nor a vanguard for debt

collection litigation, and it did not involve any novel issues warranting counsel's unique expertise or creativity in arguing for the extension or a new application of law.[5]  Based on the prevailing rates in this district, and in light of Mr. Bromberg's experience and the facts and circumstances in this case, the court finds that a reasonable hourly rate in this case for Mr. Bromberg is $300.

Mr. Lane was admitted to practice law in 2009.  (ECF No. 36, Bromberg Decl. ¶ 30.)  Although Mr. Bromberg's declaration argues that Mr. Lane has "considerably more experience in the field of law" as a result of his ten years' prior work as an investigator for the New York Legal Aid Society, (*id.* ¶ 30), investigative experience does not warrant billing at the $200 hourly rate generally billed for senior associates.  Accordingly, the court finds that $150 per hour is a reasonable rate for Mr. Lane.  *See Crapazano*, 2011 U.S. Dist. LEXIS 76759, at *4 (noting that "$100 to $150 an hour for junior associates with one to three years of experience" is

---

[5] This is evidenced by counsel's reliance on work from earlier filed lawsuits and/or work prepared by others, including the Settlement Administrator, in preparing the settlement documents for the instant case.  (*See* ECF No. 38, Reply in Support re Motion for Settlement, filed 10/10/2011, Ex. A, entry dated 10/27/2009 by PTL ("Comparing documents to Lewis and Breabrun settlement docs and editing language regarding certification and appointment of class counsel in all documents"); entry dated 10/03/2011 by BLB ("Read and review affidavit from Berdon and comparison of Berdon affidavit to affidavits prepared for my office by First Class, Inc. in other FDCPA class actions").)  Indeed, the contemporaneous records submitted by counsel reflect that little legal research was required in preparing the documents for this case.  (*See generally id.*)

reasonable)"; *Nero v. Law Office of Sam Streeter, P.L.L.C.*, 655 F. Supp. 2d 200, 212 (E.D.N.Y. 2009) (noting that a reasonable rate for a junior associate is $100 to $150, and finding that $200 per hour is a reasonable rate for a senior associate in the Eastern District of New York); *Gutman v. Klein*, No. 03-CV-1570, 2009 U.S. Dist. LEXIS 123057, at *8 (E.D.N.Y. Oct. 9, 2009) (awarding between $100 and $200 for junior associates).

Similarly, the court finds an hourly rate of $125 is appropriate Mr. Litrownik, who has been practicing law for less than one year. (*See* ECF No. 36, Bromberg Decl. ¶ 33.) Although Mr. Bromberg's declaration states that Mr. Litrownik had nearly a year of experience with consumer law during a four-month internship with the National Consumer Law Center in Boston, (*id.*), those four months cannot be compared with the experience of a senior associate.

The court has reviewed the factors in *Arbor Hill* and *Johnson*, and finds that the foregoing rates are reasonable and that a paying client in the Eastern District of New York would be willing to pay the foregoing rates in a similar case.

### b. Hours Reasonably Expended

The burden is on the party moving for attorneys' fees to justify the hourly rate sought by providing contemporaneous time records describing, with specificity, for each attorney, the nature of the work done, the hours expended, and the dates

27

on which the work was performed. *Cho v. Koam Med. Servs. P.C.*, 524 F. Supp. 2d 202, 209 (E.D.N.Y. 2007); *see also Nero*, 655 F. Supp. 2d at 211; *Scott v. City of New York*, 643 F.3d 56, 59 (2d Cir. 2011).

Here, at the court's request, plaintiff's counsel submitted a declaration and time records in support of his application for $25,000.00 in attorney's fees and $1,180.50 in expenses. (*See* ECF No. 38, Time Records.)

The court finds that certain tasks performed by both Bromberg and one or the other of his associates appear to be duplicative in nature. Because this case is not complex, such duplicative efforts appear to be unnecessary and therefore will not be fully compensated. *See N.Y. State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1146 (2d Cir. 1983) ("[A] trial judge may decline to compensate hours spent by collaborating lawyers or may limit the hours allowed for specific tasks"); *see also Lochren v. Cnty. of Suffolk*, 344 F. App'x 706, 709 (2d Cir. 2009) (affirming district court's 25 percent across-the board reduction in attorney's fees where counsel's records showed duplication of tasks); *Cooper v. Sunshine Recoveries, Inc.*, No. 00 Civ. 8938, 2001 U.S. Dist. LEXIS 8938, at *9 (S.D.N.Y. June 27, 2001) (reducing fee awards in a non-complex case where two attorneys "performed most functions in tandem, reviewing each other's drafts and

participating in the same conferences" and spent "an inordinate amount of time . . . communicating among themselves about what had already been done or what was planned for the future"). Accordingly, the associates' time for the following entries will be excluded:

- Exclusion of 0.30 hours by Mr. Lane on 04/07/2009 for "review of Defendants' letter requesting pre-motion conference" where Mr. Bromberg spent 4.40 hours for "research and preparation of response to Defendants' pre-motion conference letter" on the same day.

- Exclusion of 1.00 hour by Mr. Lane on 04/16/2009 for "researching FDCPA liability issue on Cohen & Krassner" where Mr. Bromberg spent 1.00 hours for "research re Cohen and Krassner's individual liability (at the request of defense counsel)" on the same day.

- Exclusion of 0.50 hours by Mr. Lane on 04/30/2010 for "draft, revise and edit of Memo in support of Prelim Approval. Reviewed BLB's memo and made edits" where Mr. Bromberg spent 4.50 hours for "preparation of Memorandum in Support of Preliminary Approval of Class Action Settlement" on the same day.

- Exclusion of 0.20 hours by Mr. Litrownik on 10/03/2011 for "Telephone call with Leanne Carvino and BB re affidavits from Berdon for final approval" where Mr. Bromberg spent 0.20 hours for "Telephone call w/ Leanne Carvino and MNL re affidavits from Berdon information we may need for the Court at Final Approval Hearing" on the same day.

In addition, the court finds that the time counsel expended making revisions to the settlement papers to correct errors identified by the court and/or the settlement administrator should not be compensated at counsel's full rate. (*See, e.g.*, ECF No. 16, Joint Motion for Preliminary Approval of

Class Action Settlement, filed 5/17/2010; ECF No. 18, Joint Motion for Preliminary of Amended Class Action Settlement, filed 6/30/2010; ECF No. 19, [Second Amended] Joint Motion for Preliminary of Amended Class Action Settlement, filed 7/13/2010; ECF No. 26, Third Mot. for Settlement; *see also* ECF No. 22, Status Report, filed 3/1/2011 (stating that "after speaking with the settlement administrator, additional changes to the settlement notice and related documents were necessary").) Counsel should not be compensated for his own repeated errors or omissions. Moreover, the court finds that the changes made were fairly minor and the amount of time expended to make them does not appear reasonable. Accordingly, the court will apply a 50 percent reduction to the following entries:

- 0.20 hours by Mr. Bromberg on 06/07/2010 for "Telephone call w Judge Matsumoto's law clerk, Anna Hershenberg, and Brett Scher re corrections that she wants made to settlement documents."

- 1.20 hours by Mr. Bromberg on 06/10/2010 for "Review, analysis and revision of settlement documents per Judge Matsumoto's direction."

- 0.90 hours by Mr. Bromberg on 06/21/2010 for "Preparation of revised settlement agreement and joint motion."

- 2.20 hours by Mr. Bromberg on 06/30/2010 for "Final preparation of amended motion for approval of class action settlement."

- 1.20 hours by Mr. Bromberg on 07/13/2010 for "Preparation of Second Amended Joint Motion for Preliminary Approval of Amended Class Action Settlement."

- 0.10 hours by Mr. Bromberg on 07/13/2010 for "Telephone call w Judge Matsumoto's law clerk re correcting a minor omission in the Joint Motion document (ECF #18)."

- 0.80 hours by Mr. Bromberg on 11/09/2010 for "Preparation of third revised set of settlement documents."

- 3.00 hours by Mr. Bromberg on 04/22/2011 for "Final preparation, filing, and service of third motion for preliminary approval and cover letter re scheduling to Judge Matsumoto."

- 1.50 hours by Mr. Bromberg on 04/26/2011 for "Telephone call w chambers, telephone call with docketing clerk, amending Exhibit A to Motion for Preliminary Approval, emails to docketing clerk, and emails to adversaries."

Finally, Mr. Bromberg's entry on July 4, 2010 listing 0.30 hours for "Preparation of copy of all settlement docs and motion papers for client's records" will be billed at a rate of $75 per hour, which is an appropriate rate for clerical work such as copying. *See Baruch*, 2007 U.S. Dist. LEXIS 80429, at *19-20 (finding that clerical work such as copying, mailing, and uploading documents to the electronic case filing system is "not compensable at an attorney's rate"); *Crapazano*, 2011 U.S. Dist. LEXIS 76759, at *4 (noting that reasonable rate for legal assistants is $70 to $80 per hour).

Accordingly, the court awards attorneys' fees in the amount of $16,710.00, calculated as follows:  $12,405.00 for Bromberg's 41.35 hours at $300 per hour and $22.50 for 0.30 hours of clerical work on July 4, 2010 at $75 per hour;

31

$2,745.00 for Lane's 18.30 hours at $150 per hour; and $1,537.50 for Litrownik's 12.30 hours at $125 per hour.

The court notes that the declaration and time records submitted by plaintiff's counsel does not include invoices or any other documentation supporting his request for $1,180.50 in expenses.  (*See* ECF No. 38, Time Records at 7.)  The court takes judicial notice that the cost of filing a civil action in federal district court is $350, and accordingly will reimburse plaintiff's counsel for this filing fee.  *See* 28 U.S.C. § 1914(a).  Plaintiff's request for service fees totaling $820.00 and courier fees totaling $10.50, however, is denied because these expenses are unsupported.  *See Tatum v. City of New York*, No. 06-cv-4290, 2010 U.S. Dist. LEXIS 7748, at *41 (S.D.N.Y. Jan. 28, 2010) ("Expenses not supported by documentation will not be considered.").

## IV. Award to Named Plaintiff

Finally, the settlement agreement contemplates an award of $3,000 to the class representative, Theresa Garland, in recognition of her efforts on behalf of the class.  "This award is consistent with the range of awards made in favor of class representatives in similar cases." *Gross v. Wash. Mut. Bank, F.A.*, No. 02-CV-4135, 2006 U.S. Dist. LEXIS 16975, at *18-19 (E.D.N.Y. Feb. 8, 2006) (approving $5,000 award for named

plaintiff in settlement of FDCPA action).  Therefore, the court
approves the $3,000 payment to Garland.

**NOW, THEREFORE:**

Whereas this matter comes before the court on the
joint request of Plaintiff and a class of persons similarly
situated (collectively, "Plaintiffs" or "Class Members") and
Defendant for final approval of the Class Action Settlement
Agreement (the "Agreement"), dated April 21, 2011.

Whereas on June 13, 2011, notice was sent by first
class mail to 3,201 Persons at their last known mailing address
using Accessible Contact Information.  A total of 27 Notices
were returned with forwarding addresses and re-mailed.  A total
of 855 Notices were returned as undeliverable and forwarded to
Accurint to find corrected addresses.  A total of 614 corrected
addresses were located by Accurint, and Notices were re-mailed
to those corrected addresses.  On or about June 16, 2011, it was
discovered that 519 Notices had been sent in error to
individuals who were not eligible to be Class Members because
they did not reside in New York State.  Of those 519 Notices,
three were duplicates and 162 were returned as undeliverable.
On June 30, 2011, a total of 354 errata notices were mailed,
five of which were returned with forwarding addresses and re-

mailed, and one of which was returned as undeliverable.
Accordingly, the total number of Class Members is 2,682.

Whereas two Class Members requested exclusion from the Settlement.

Whereas no Class Members objected to the Settlement.

Whereas a total of 81 individuals timely sent in claim forms and no Class Members sent in a late claim forms. Five of the claim forms were sent by individuals who were not eligible to be Class Members because they did not reside in New York State. Those five individuals were sent errata notices. One of the claim forms was a duplicate of another claim form received. Accordingly, 75 Class Members are entitled to share in the *pro rata* distribution of the settlement funds.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:**

1. <u>Definitions</u>. For the purposes of this Order, the court adopts by reference the definitions set forth in the Definitions section and throughout the Class Action Settlement Agreement (the "Agreement"), dated as of April 21, 2011, attached as Exhibit A to the Parties' Motion for Preliminary Approval.

2. <u>Notice</u>. The court finds that the distribution of the Notice as provided for in the Preliminary Approval Order, constituted the best notice practicable under the circumstances

to all Persons within the definition of the Class, and fully met
the requirements of Federal Rule of Civil Procedure 23, any and
all substantive and procedural due process rights guaranteed by
the United States Constitution, and any other applicable law.

       3.  <u>Final Approval</u>.  The court finds that the
Settlement is fair, reasonable, and adequate, and accordingly,
the court approves the Settlement and directs that the Parties
implement it, as follows:

       a.  The parties are directed to implement the
settlement in accordance with its terms.  Payment of $3,000.00
shall be made to Theresa Garland, the Class Representative.
Payment of the $6,650.00 settlement fund is to be made by
issuing separate settlement checks on a *pro rata* basis to each
of the 75 Class Members who sent in a timely claim form and did
not opt out of the Settlement.  Settlement checks to these Class
Members shall expire 90 days from the date they are issued and
notice of such expiration shall appear on the face of the
checks.  To the extent that there are any funds from un-cashed,
expired Settlement Checks, an amount equal to the amount of such
un-cashed checks will be paid over as a *cy pres* award to Class
Counsel to be distributed to the National Consumer Law Center.
Defendant shall pay the costs of distributing the settlement
funds to the class.  Defendant shall pay the costs of

distribution in addition to the $6,650.00 to be paid to the class and the $3,000 to be paid to Theresa Garland.

b.    Except as to any individual claim of those Persons who have timely and effectively requested exclusion from the Settlement Class, the court hereby dismisses with prejudice the Action, all claims contained therein, and all Released Claims against the Defendant and its Related Parties.

c.    The Parties are to bear their own costs, except as otherwise provided in the Agreement.

d.    Upon the Effective Date, the Class Representative and all Class Members who have not timely and effectively requested exclusion from the Class shall be deemed to have, and by operation of law shall have, fully, finally, and forever released and discharged all Released Claims against each and all of the Defendant and its Related Parties.

e.    Nothing herein shall alter, amend, or terminate the right of Defendant to collect any balance (including, but not limited to, principal, interest, attorneys' fees, and other costs and charges) owed by any Settlement Class Member, for any debt.  Nothing herein releases or discharges: (1) any legally enforceable claim which Defendant may have against any Class Member or any other person or entity; or (2) any legally enforceable lien which Defendant may have against any or all Class Members or any other person or entity.  Nothing

herein voids or abrogates the contractual obligations of any Settlement Class Member.

        4.   <u>Injunction</u>.  The court bars and permanently enjoins all Class Members, except those who timely and effectively requested exclusion from the Settlement, from instituting or prosecuting any action or proceeding, whether class or individual, against Defendant and its Related Parties for liability in any way related to, arising out of, or based upon the Released Claims during the relevant class period.

        5.   <u>Defendant's Denial of Liability</u>.  The court notes that Defendant denies any liability to Plaintiff or to the Class for any matter whatsoever.  Without conceding any infirmity in its defenses, and while continuing to deny all allegations of liability, Defendant considers it desirable that the Action be dismissed and that the claims against Defendant be released, on the terms set forth herein, in order to avoid further expense, dispose of burdensome and protracted litigation and put to rest all claims which have or could have been asserted against Defendant arising from the acts, transactions, or occurrences alleged in the Action.

        6.   <u>Jurisdiction</u>.  The court finds that it has jurisdiction over the subject matter of the Action, the Class Representative, the other Class Members, and Defendant.  Without affecting the finality of the Judgment, the court reserves

exclusive and continuing jurisdiction and venue with respect to the consummation, implementation, enforcement, construction, interpretation, performance, and administration of the Agreement or Judgment.

7.  Attorneys' Fees and Costs.  After reviewing Class Counsel's declaration in support of fees and costs, the court awards to Class Counsel attorneys' fees and costs in the amount of $17,060.00.  Defendant does not contest this award. Defendant shall pay this amount in addition to the $6,650.00 to be paid to the Class Members and the $3,000 to be paid to Theresa Garland.

8.  Timing of Payments or Consideration.  No later than 30 days after the Judgment becomes Final, as defined in paragraph 14 of the Agreement, settlement checks shall be distributed to all Class Members who have timely returned a claim form, and Defendant shall pay $3,000 to Theresa Garland and $17,060.00 to Class Counsel for attorneys' fees and costs.

9.  Entry of Judgment.  There being no just reason to delay entry of Judgment, the Clerk of the Court is ordered to enter Judgment forthwith.

**SO ORDERED:**
Dated:     November 29, 2011
           Brooklyn, New York

                              _____/s/_____
                              KIYO A. MATSUMOTO
                              United States District Judge
                              Eastern District of New York